**LEONHARDT v. PESCOR, Warden.**

No. 13606.

Circuit Court of Appeals, Eighth Circuit.

July 1, 1948.

Carl John Wilhelm Leonhardt pro se.

Sam M. Wear, U. S. Atty., and Sam O. Hargus, Asst. U. S. Atty., both of Kansas City, Mo., for appellee.

Before THOMAS, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

This is an appeal from an order denying appellant's petition for a writ of habeas corpus and returning him to the custody of the Warden of the U. S. Medical Center at Springfield, Missouri, where he is held under a sentence of the United States District Court for the Eastern District of Michigan. The case is submitted on briefs of the parties, the motion of the Government to dismiss the appeal because of failure to prosecute it diligently, and the motion of appellant for appointment of counsel to represent him in this court. The Government's motion to dismiss is denied for want of merit. And since an examination of the record has convinced us that the case must be remanded to the District Court for further proceedings in which appellant may have assistance of counsel, appellant's motion for appointment of counsel here is denied.

Of the grounds alleged in support of appellant's petition for habeas corpus, only two require mention. These are that appellant was not represented by counsel at any stage of the proceeding which resulted in his conviction and sentence, and that he did not know and was never advised of his right to be represented by counsel; and that his plea of guilty was obtained by promises and coercion of the Federal law enforcement officers who held him in their custody prior to his appearance in court.

The facts as far as they may be ascertained from the record are as follows:

At about 6:30 A.M. on August 24, 1943, as appellant, a cabinet maker, was leaving his home in Detroit to go to work, he was intercepted by a party of agents of the Federal Bureau of Investigation. He was told by these agents that some of them were present to arrest his wife on a presidential warrant as a dangerous enemy alien, that others were there to search the premises, and still others for the purpose of taking appellant to the office of the Federal Bureau of Investigation for interrogation.

Appellant asked and was denied permission to speak to his wife. But after her arrest he was permitted to change his clothes before going to the office of the Federal Bureau of Investigation which was reached between 7:30 and 8:00 A.M. He was induced to accompany the officers on the representation that he would be near his wife and might learn what happened to her. He was kept at the office of the Federal Bureau of Investigation until late in the evening of the day, and while there he was subjected to a searching examination concerning his participation in an alleged conspiracy to violate the Espionage Act of 1917, 50 U.S.C.A. § 32 et seq.

There was at this time no warrant or process outstanding against the appellant. The depositions of three of the agents of the Federal Bureau of Investigation who participated in appellant's examination, which apparently was continued from time to time throughout the day, were introduced in evidence in the habeas corpus proceeding, and one of the agents appeared in

person to testify. The testimony of these witnesses is that appellant during his examination was treated with courtesy and kindness, was advised that he was not compelled to submit to examination or to answer the questions of the agents, and that appellant voluntarily and without compulsion or promises gave them a full and detailed account of his life in Germany, his service in the German army before and during the first World War, his entry into this country, his subsequent naturalization, his life in this country, and his connection with other German Americans suspected of participation in a conspiracy to violate the Espionage Act then under investigation by the Federal Bureau of Investigation, many of whom on the same day had been taken into custody on presidential warrants.

Appellant's testimony was that during his detention he was told by the officers who examined him that they had in custody all the members of the alleged conspiracy, that he was the head of a dangerous German spy ring, that he had greatly injured the United States, that he was liable to execution by hanging or shooting, and that his best course was to sign a statement admitting his guilt and thereby, with their aid, receive a lighter sentence.

It is not clear from the record whether appellant on the day in question signed statements implicating himself in the conspiracy to violate the Espionage Act for which he was subsequently indicted or whether these statements were given on later visits to the office of the Federal Bureau of Investigation. It does appear, however, that he eventually gave two statements and that one of them was to the effect that if he was charged as a member of the suspected conspiracy he would enter a plea of guilty. Appellant's statements to the Federal officers were made and signed before his indictment which was returned on September 17, 1943. In the indictment appellant, his wife, and six others, named as defendants, were charged with conspiring among themselves and with numerous other conspirators, named as such but not as defendants, and with the government of the German Reich to violate the Espionage Act of 1917 by procuring and transmitting to the government of the German Reich

information relating to the defenses of the United States. Forty-seven overt acts were charged, in two of which the appellant is alleged to have conferred with other defendants for the purpose of effecting the conspiracy charged.

Mr. Summerhays, agent of the Federal Bureau of Investigation in charge of appellant's investigation, examination, and arrest, was a witness for the Government on the hearing of the petition for habeas corpus. From the testimony of this witness it appears that appellant was arrested before his indictment but after his examination by the Federal officers and was kept in the office of the Federal Bureau of Investigation, in the words of the witness, "until the news came that indictment had been returned and a bench warrant was issued for him. He was then handed over to the United States Marshal * * *. After he was taken into the Marshal, he was arraigned before Judge Moinet and given a copy of the indictment. We went in to talk to him about that at his request and advised him that he would have the right to .counsel and that he could do as he pleased, either enter a plea of guilty or not guilty; if he did not have funds to hire counsel or pay counsel, that the Court would appoint an attorney."

Asked by the court what occurred when appellant was taken before Judge Moinet, the witness said:

"Well, he was taken in. They asked him how he was going to plead, apprised him of the charges that were against him, and he stood mute on that occasion, and later he entered a plea of guilty."

The witness was not present in the court at the time the plea was entered. From the depositions of the three other agents of the Federal Bureau of Investigation introduced at the hearing, it appears that they were present during the various interrogations of appellant, and that two of them were present in the District Court at the time appellant pleaded guilty, but neither of them testified to what occurred in the courtroom.

The record contains a copy of the judgment and commitment which shows that on the 25th day of March, 1944, the appellant

on his plea of guilty was sentenced to ten years in a Federal Penitentiary. The passage of approximately seven months between appellant's plea of guilty and his sentence, while appellant was held at the Federal Correctional Institution at Milan, Michigan, is explained by the fact that the judge delayed sentencing those members of the conspiracy who entered pleas of guilty until completion of the trial of one who entered a plea of not guilty.

The judgment as it appears in the record is a standard printed form containing blanks for pertinent dates, for the name of the defendant, and a space in which the clerk preparing the judgment is advised, by directions printed at the bottom of the form, to write in whether the defendant appeared "by counsel" or "having been advised of his constitutional right to counsel and having been asked whether he desired counsel assigned by the Court, replied that he did not." The judgment shows the last quoted phrase in typewriting, and this is the only evidence for the Government as to what occurred either at the time of appellant's arraignment or at the time of his sentence.

Appellant's testimony as reported in the transcript of the proceeding for habeas corpus is not always intelligible, but in reply to questions from the court he described the proceeding at the time of his sentence as follows:

"Then the clerk of the Court called me and I go forward before Judge Moinet. He asked me, 'You are Carl John Wilhelm Leonhardt?' I say, 'Yes, Your Honor.' 'You plead guilty?' 'Yes, Your Honor.' 'What have you to say?' I said, 'Please, Your Honor, give me credit for the seven months I served in the correctional institution, Milan, Michigan.' He say, 'No, I sentence you for ten years to the penitentiary.'"

In his verified petition he stated that he was never at any stage of the proceeding advised of his right to be represented by counsel. And in court he denied that he was so informed by the agents of the Federal Bureau of Investigation.

At the conclusion of the testimony the Government attorney advised the court that he was not prepared to offer any evidence as to what took place in the courtroom at the time appellant pleaded guilty, and suggested the advisability of continuing the proceeding until the testimony of the trial judge could be secured. He asked for time in which to secure the necessary proof. His request was denied on the ground that the absent evidence was not necessary to the Government's case.

Dismissing the writ theretofore issued on appellant's petition, the court entered the following findings of fact important on the issue here:

"2. At the time of the Petitioner's arraignment he had previously been advised by officials of the Government of his constitutional right to counsel. He had been informed of the nature and extent of the charges pending against him. He had been advised that he was not required to make a statement against his own interests and subsequent thereto the Petitioner had made a full confession and statement to officers of his guilt.

"3. With full knowledge of his constitutional rights and of the nature and extent of the charges preferred against him the Petitioner freely and voluntarily, and without coercion or promises, formally entered a plea of guilty to the charges preferred against him."

The record contains evidence to support the finding that appellant, without coercion or promises on the part of the arresting officers, signed a statement confessing his guilt of the charges against him. The evidence also supports the finding that appellant was advised by the agents of the Federal Bureau of Investigation of his right to counsel and of the court's duty to appoint counsel to represent him if he was unable to employ counsel or desired representation by counsel. We may go further and agree that the evidence supports the finding that appellant had been informed by the arresting officers of the nature and extent of the charges pending against him. But in view of the decision of the Supreme Court in Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, we think the question of whether the defendant knowingly and in-

telligently waived his right to counsel and entered his plea of guilty "with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter" (68 S.Ct. 323) remains a question of grave doubt on the record before us.

The decision in the Von Moltke case came down after this case was decided by the District Court. Mrs. Von Moltke was one of the defendants charged in the same indictment with appellant and like appellant sentenced on a plea of guilty and after waiver of representation of counsel. She entered her plea of guilty after long and extended consideration and after repeated discussions with and advice of the agents of the Federal Bureau of Investigation, some of whom were lawyers and all of whom treated Mrs. Von Moltke with courtesy and consideration and attempted honestly to advise her of her rights. The judge who accepted her plea of guilty did so only after careful inquiry and after she had signed a waiver of representation by counsel.

In her petition for habeas corpus Mrs. Von Moltke alleged that she had not completely and intelligently waived her right to representation by counsel nor entered her plea of guilty with a full understanding of the nature of the charges against her. The Sixth Circuit, 161 F.2d 113, affirmed the order of the District Court denying her application for a writ of habeas corpus. The Supreme Court reversed.

Four of the justices of the Supreme Court expressed the firm opinion that proof that Mrs. Von Moltke had been honestly advised by officers of the Government and on that advice had waived representation by counsel and entered a plea of guilty was not enough to satisfy the requirements of the Sixth Amendment to the Federal Constitution. "The right to counsel guaranteed by the Constitution contemplates the services of an attorney devoted solely to the interests of his client. Glasser v. United

States, 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 * * *. Undivided allegiance and faithful, devoted service to a client are prized traditions of the American lawyers. It is this kind of service for which the Sixth Amendment makes provision." (68 S.Ct. 324.) Two of the justices were of the opinion that it was impossible to tell from the record whether the advice given by the officers of the Government to Mrs. Von Moltke was erroneous. The majority of the Court reversed the Sixth Circuit and remanded the case to the District Court for findings upon this question as essential to the determination of whether Mrs. Von Moltke knowingly and competently and with full understanding of the nature of the charges against her waived her right to counsel and entered her plea of guilty.

 In this case there is nothing in the record to show whether any of the agents of the Federal Bureau of Investigation were lawyers or, if they were, whether they were competent to correctly and fully advise the appellant charged with conspiracy with the public enemy in a long and involved indictment. Nor does the record afford any basis for ascertaining what these agents of the Government told the appellant concerning the nature of the charges against him, the proof necessary to support the conviction, the probable consequences of his plea of guilty, and the law governing the case against him. The record of the habeas corpus proceedings reveals defendant as an old man with little or no education, his powers of mind weakened if not at times destroyed by disease and advancing age, utterly without comprehension of the value of representation by counsel in the serious situation with which he was confronted when charged in an indictment with conspiracy to aid the government of Germany when this country was at war with Germany and Japan. We conclude that the district attorney was right in requesting the trial court to delay decision until the evidence of the sentencing judge could be obtained or the reporter's transcript of the proceedings on arraignment produced in evidence. The record indicates that the testimony of what occurred in the court at the time appellant waived his right

to counsel and entered his plea is readily available. That this material evidence may be obtained this case must be remanded to the District Court.

Reversed and remanded for further proceedings.